UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRISTOPHER LEE,<br><br>Plaintiff,<br><br>v.<br><br>SANTA CLARA VALLEY TRANSPORTATION AUTHORITY,<br><br>Defendant. | Case No. 5:15-cv-05338-HRL<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 20 |

Plaintiff Christopher Lee sues for injuries he says he sustained while exiting a bus operated by defendant Santa Clara Valley Transportation Authority (VTA). He claims that defendant violated federal and state disability anti-discrimination laws and was negligent. The VTA now moves for summary judgment. Plaintiff opposes the motion.[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Upon consideration of the moving and responding papers, the court grants defendant's motion as follows:

---

[1] Plaintiff belatedly filed his opposition papers, only after defendant filed a notice stating that he failed to submit his papers by the deadline, Civ. L.R. 7-3(a). While the court does not condone plaintiff's failure to adhere by filing deadline, it has accepted and considered his papers. Defendant's request to disregard plaintiff's opposition as untimely is denied, as is plaintiff's request that defendant's motion be stricken because it was e-filed as a scanned document, rather than in text-searchable format.

**BACKGROUND**

Unless otherwise indicated, the following facts are undisputed:

Due to a stroke, resulting in partial paralysis, Lee requires the use of a powered wheelchair for mobility. Starting around 2010, he began using VTA public transportation (mainly buses) to go to doctor's appointments, to get to the pharmacy, and to travel to Santa Cruz. He continues to use VTA buses today.

When traveling on defendant's buses, Lee uses the wheelchair ramps, which he says are "convenient" and "fairly comfortable." (Dkt. 24, Declaration of Richard North, Ex. A (Lee Depo. at 20:15, 43:25)). And, over the years, plaintiff has traveled on defendant's buses a number of times without incident. For example, he testified that he takes the #66 bus to the pharmacy roughly 24-30 times annually. (Id. at 19:21-20:5). Additionally, for a period of about two years, he took buses every Sunday to get to Santa Cruz. (Id. at 15:19-20). Except for the incident in question, each time plaintiff traveled on VTA buses, the wheelchair ramp was always deployed to the sidewalk. (Id. at 23:10-19).

On January 10, 2015, plaintiff was riding on VTA coach #2336 (Coach #2336). Defendant purchased Coach #2336 from manufacturer New Flyer Artic in 2002. (Dkt. 22, Declaration of James Wilhelm (Wilhelm Decl.), ¶ 4). The bus came equipped with an Americans with Disabilities Act-compliant wheelchair ramp installed by New Flyer Artic. (Id. ¶¶ 5-7, Ex. A).

On the day in question, Coach #2336 was running on VTA's fixed route #22, which Lee had traveled a number of times before. Around noon, the bus arrived at his stop at 15th and Santa Clara Streets in downtown San Jose. The bus operator was unable to pull up to the curb because cut fronds from nearby palm trees were piled around the curb and the bus stop. Instead, the operator stopped the bus several feet from the curb and deployed the wheelchair ramp to the street. As he prepared to exit the bus, plaintiff says that the ramp looked very steep. But, believing that the bus driver knew what he was doing, he chose not to say anything. Lee also considered asking for assistance, but decided against it and proceeded down the ramp. As he descended the ramp, Lee says that his wheelchair built up too much speed and flipped over, causing him to fall out of the wheelchair onto the ground. According to plaintiff, the ramp was too steep because it was

deployed to the ground, rather than the sidewalk. This lawsuit followed.

In his complaint, Lee asserts claims for violation of the Americans with Disabilities Act (ADA) and the California Unruh Civil Rights Act (Unruh),[2] as well as for negligence. He seeks declaratory and injunctive relief, as well as statutory damages, special damages, and attorney's fees.

The VTA now moves for summary judgment on the ground that plaintiff has no valid ADA claim. Additionally, defendant argues that Lee's Unruh claim is entirely dependent on the ADA claim and also fails. Defendant requests that the court otherwise decline to exercise jurisdiction over plaintiff's state claims. For the reasons discussed below, the court grants defendant's motion as to the ADA claim. The court also declines to exercise supplemental jurisdiction over plaintiff's state law claims, and those claims are dismissed without prejudice.

**LEGAL STANDARD**

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. See Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue

---

[2] Plaintiff's complaint does not specify the particular sections of the ADA or the Unruh Civil Rights Act on which his claims are based.

1 of material fact for trial. See id. A genuine issue of fact is one that could reasonably be resolved
2 in favor of either party. A dispute is "material" only if it could affect the outcome of the suit
3 under the governing law. Anderson, 477 U.S. at 248-49.

4     "When the nonmoving party has the burden of proof at trial, the moving party need only
5 point out 'that there is an absence of evidence to support the nonmoving party's case.'"
6 Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Celotex Corp., 477 U.S. at
7 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere
8 allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine
9 issue for trial. Id.

## DISCUSSION

The court will first address plaintiff's federal claim under the ADA. There are no material fact disputes here. The primary point of contention is whether plaintiff has a valid claim, as a matter of law. The court concludes that he does not.

As noted above, plaintiff's complaint does not identify the particular section of the ADA upon which his claim is based. In his opposition, however, he briefly references both 42 U.S.C. § 12142 and § 12143. Section 12142 pertains to public entities operating fixed route systems and provides that it is discrimination to purchase or lease vehicles that are not readily accessible to and usable by individuals with disabilities, including those who use wheelchairs. Additionally, ADA Section 12143 says that it is discriminatory for public entities operating fixed route systems to provide disabled individuals with service that is inferior to those provided to the nondisabled.

In order to be entitled to injunctive relief, Lee must show that he faces a real or immediate threat of substantial or irreparable injury. Midgett v. Tri-County Met. Transp. Dist. of Oregon, 254 F.3d 846, 850 (9th Cir. 2001). Additionally, because Lee "seeks to enjoin a government agency, 'his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs.'" Id. (quoting Rizzo v. Goode, 423 U.S. 362, 378-79, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). "This 'well-established rule' bars federal courts from interfering with non-federal government operations in the absence of facts showing an immediate threat of substantial injury." Id. (citation omitted).

Here, the VTA has presented evidence that the bus in question was equipped with an ADA-compliant wheelchair ramp. (Wilhelm Decl. ¶¶ 5-7, Ex. A). Additionally, Maurice Beard (a VTA Technical Training Supervisor) attests that defendant has policies and practices in place for ensuring that its bus operators are trained in, and receive copies of, the VTA's rulebook and guidelines re ADA compliance. (Dkt. 23, Beard Decl. ¶¶ 5-6). This evidence is unrefuted.

Plaintiff nevertheless maintains that he has a viable ADA claim because, on the day in question, the bus operator improperly deployed the wheelchair ramp to the street, contrary to the manufacturer's instructions. Defendant's objections to plaintiff's opposition and evidence (Dkt. 30) are sustained. But, even accepting plaintiff's premise that the ramp was improperly deployed, he has not established an ADA claim here. "The regulations implementing the ADA do not contemplate perfect service for wheelchair-using bus commuters." Midgett, 254 F.3d at 849. In Midgett, the Ninth Circuit concluded that the plaintiff failed to establish an ADA violation, despite his evidence of several incidents where bus wheelchair lifts malfunctioned, as well as affidavits from five other bus users who described their experience with defective lifts and one instance where a bus operator failed to properly deploy the wheelchair ramp. Such evidence established a few "frustrating, but isolated instances" of inadequate service and that "a few individual [bus] operators have not treated passengers as they are required and are trained to do." Id. Even so, the Ninth Circuit found that "these occasional problems do not, without more, establish a violation of the ADA" and do not support an inference that the plaintiff faced "a real and immediate threat of *continued, future* violations of the ADA in the absence of injunctive relief." Id.; see also Hulihan v. Regional Transp. Comm'n of S. Nevada, No. 2:09-cv-01096-ECR-RJJ, 2012 WL 2060955 (D. Nev., June 7, 2012) (concluding that the plaintiff failed to establish an ADA violation based on one missed pick-up by the defendant paratransit bus system and one instance of an employee failing to properly secure plaintiff's wheelchair), aff'd 582 Fed. Appx. 727 (9th Cir., June 25, 2014).

Lee argues that the VTA has failed to present evidence demonstrating that the January 10, 2015 incident was indeed isolated. Plaintiff, however, bears the burden of proof establishing his entitlement to injunctive relief. Here, his evidence establishes a single instance of inadequate

5

service. As in Midgett, this court concludes that such evidence, without more, cannot support plaintiff's claim for relief under the ADA, and that claim must be dismissed.

**ORDER**

Based on the foregoing, defendant's motion for summary judgment is granted as to the ADA claim. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims and dismisses those claims without prejudice. 28 U.S.C. § 1367(c). The clerk shall enter judgment accordingly and close this file.

SO ORDERED.

Dated:   October 31, 2016

HOWARD R. LLOYD
United States Magistrate Judge

5:15-cv-05338-HRL Notice has been electronically mailed to:

Lars T. Fuller     Larsfuller@aol.com

Richard D. North     richard.north@vta.org, margarita.martinez@vta.org